516 A.2d 872

Patricia A. Beharry, Controller of Washington County, Pennsylvania, Appellant *v.* Frank B. Mascara, Metro Petrosky, Jr., Edward M. Pasluso, County Commissioners and Members of the Salary Board of Washington County, Pennsylvania, Appellees.

Argued June 12, 1986, before President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge KALISH, sitting as a panel of three.

*Frank C. Carroll, Frank C. Carroll, P.C.,* for appellant.

*Melvin B. Bassi, Bassi and Rega, P.C.,* for appellees.

OPINION BY SENIOR JUDGE KALISH, October 29, 1986:

Appellant, Patricia A. Beharry, Controller of Washington County, Pennsylvania, appeals an order of the Court of Common Pleas of Washington County affirming an earlier order which ordered her to approve payment of the billings for drugs and consultative services of Phillip Sollon, registered pharmacist, in accordance with a contract and the custom and practice of the County Commissioners (appellees). We affirm the trial court.

For some time prior to December 14, 1984, one William DuVall was the registered pharmacist in charge of the Washington County Medical Center (Center), under a contract with the County. On the above date, DuVall requested and received a leave of absence. Phillip Sollon, a pharmacist, was appointed by the County Commissioners to take his place. On January 24, 1985, the County Commissioners executed a contract under which Sollon agreed to perform the services as a pharmacist vendor and consultant, effective January 1, 1985.

Beharry, as county controller, refused to honor Sollon's bills for services from December 14, 1984 to January 24, 1985. The County Commissioners brought an action in mandamus to compel payment, and simultaneously filed an action for emergency relief. It was assigned to Judge TERPUTAC. He issued an order in which he stated, "After a careful review of the evidence concerning this matter, the court is inclined to believe that an emergency exists only because of the difficulty in securing another pharmacist. . . ." Earlier, he had ordered "that the County Commissioners may order such drugs as are reasonably necessary."

After a final hearing to resolve the whole matter, the trial judge stated:

> Washington County operates the Center as part of its governmental functions. . . . Since 1974 the Medical Director would write out the prescription or request, and the pharmacist would supply that which was needed. The pharmacist would send his statement to the staff of the Center who would review the billings. After the bills were reviewed, the staff sent them to the county controller for approval and payment.

The trial judge further found that neither advertising nor bidding was employed by the Commissioners to secure the instant contract. The trial court granted the relief requested and issued a writ of mandamus directing Beharry to pay the amounts due to Sollon under the contract, and the amounts due from December 15, 1984, the latter of which were approved by the Commissioners because of the emergency.

Beharry contends that the contract under which the pharmacist operates is invalid because its terms are unclear and ambiguous; that no standard is set for prices charged for the drugs and no procedure is set forth for payment; that the County Commissioners abused their

discretion in making the contract on the last day of work; and that no written contract for the period December 14, 1984 to January 24, 1985 was ever made.

Under section 1802(h)(5) of the County Code (Code), Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. §1802(h)(5), no bidding is required in contracts involving services of members of the medical or legal profession, registered architects, engineers, certified public accountants, or other personal services involving professional expert advice.

The record shows that the duties of the pharmacist include examining patient charts, submitting reports and participating in formulating the policies and procedures of the Center. Certainly, dispensing drugs and consulting in formulating policies require the expertise of a professional, and come within the terms of the County Code setting forth contracts involving personal services and advice of a professional expert as those not requiring bidding.

Contract interpretation and construction are questions of law. The court first looks to the contract to ascertain the intention of the parties. Where its meaning may be obscure or susceptible to two different interpretations, prior dealings, performance and acts of the parties are always relevant to its interpretation. *Department of Transportation v. Bracken Construction Co.,* 72 Pa. Commonwealth Ct. 620, 457 A.2d 995 (1983).

The record shows that over the years, billings, according to present practice, have been approved by the controller after review by the staff. Furthermore, the controller does not have the duty of administering the affairs of the municipality. If the controller does not approve a claim he or she shall, within thirty days, forward the bill to the County Commissioners, with his or her reasons for refusing to approve. Section 1752 of the

Code, 16 P.S. §1752. A review of the record shows that Beharry failed to comply with this procedure. The controller is not an "overlord of the other county officers." *Thayer v. McCaslin,* 314 Pa. 553, 556, 171 A. 898, 899 (1934). Under sections 1701 and 1702 of the Code, 16 P.S. §§1701 and 1702, the County Commissioners have the duty of managing the affairs of the municipality. The contract was lawfully entered into under a situation of an emergency nature.

Beharry had also filed a motion to recuse alleging that the trial judge was involved in another action as a plaintiff, which involved Beharry's denial of payment to the judge's employees, and that in this election year Beharry has been subjected publicly to criticism about her duties which has created an aura of prejudice. She further alleged that the President Judge, in other cases involving the issue of recusal, where the controller was involved, had indicated that judges would recuse and that this judge should do the same. The trial judge denied the motion to recuse.

The trial judge stated that court employees are not involved in this particular suit; that he has no interest in the other suit except as it involves court administration; that statements concerning the controller's competency were made by County Commissioners and had nothing to do with his court; that the request for recusal was not made until several weeks had passed since the action was started, and after an extensive hearing; and that he concludes that his impartiality is unquestioned.

The Code of Judicial Conduct imposes standards of conduct upon the judiciary to be referred to by a judge *in his self-assessment* of whether he should volunteer to recuse himself from a matter pending before him. The Code of Judicial Conduct does not give standing to others, including a court, to seek enforcement or compliance, because its provisions merely set a norm of conduct for all judges.

When circumstances arise during the course of a trial raising questions of a judge's impartiality, it should be set forth in a petition and addressed to the judge before whom the proceedings are tried. The judge may determine the question in the first instance, and his or her disposition will not be disturbed unless there is an abuse of discretion. If the judge wishes a further examination of the question of unfairness, he or she may ask another judge to decide it, but he or she is not required to do so.

Once the judge makes the decision it is final and the case must proceed. The propriety of this decision is grounded in abuse of discretion and is preserved as any other assignment of error, should the objecting party find it necessary to appeal following the conclusion of the case. Here the trial judge gave assurances and adequate reasons for no bias or prejudice. In fact it is presumed that the judge is unbiased and impartial. *Reilly v. SEPTA*, 507 Pa. 204, 489 A.2d 1291 (1985).

Accordingly, we affirm.

ORDER

Now, October 29, 1986, the Court of Common Pleas of Washington County, No. 221 February Term, 1985, A.D., dated August 13, 1985, is affirmed.